UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 1-19-cr-76-HSM-CHS |
| ) | |
| EUGENE BENNERSON ) | |

## REPORT AND RECOMMENDATION

### I. Introduction

Defendant Eugene Bennerson moves to suppress evidence of drug trafficking found in his motel room located in Knoxville, Tennessee, during the execution of a search warrant. [Doc. 44]. Defendant asserts the affidavit used to obtain the search warrant does not support probable cause and, therefore, police searched his motel room in violation of his Fourth Amendment rights. Because I find the affidavit does support probable cause to believe evidence of drug trafficking would be found in the motel room, it is **RECOMMENDED** that the motion to suppress be **DENIED**.

### II. Facts

On February 13, 2019, Special Agents with the Tennessee Bureau of Investigation (TBI) executed a search warrant at Room 245 at the Red Roof Plus+ & Suites motel. A Knox County, Tennessee, Criminal Court Judge had signed the search warrant at 5:40 PM earlier that same day. Agents found in Room 245, among other items, 9 ¼ ounces of methamphetamine, digital scales, and a receipt from the "Red Roof Inn" to Defendant Eugene Bennerson. [Doc. 45-2, Page ID # 122]. Defendant is charged with federal drug trafficking crimes including: conspiracy to distribute and distribution of methamphetamine and possession of a firearm in furtherance of a drug trafficking crime in violation of 21 U.S.C. §§ 841, 846 and 18 U.S.C. § 924(c).

TBI Special Agent Neal Baldwin prepared and signed under oath the affidavit used to support the search warrant. The affidavit provides in relevant part:

- On February 13, 2019, Special Agents with the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) arranged with a confidential source (CS) for a controlled purchase of approximately four ounces of methamphetamine. [Baldwin Aff. at 8, Doc. 45-3, Page ID # 125].

- The CS told the agents that Grenardric Williams had informed the CS that Grenardric Williams' brother and a female would arrive in Athens, Tennessee, in a black two-door sedan with front end damage later that afternoon to complete the transaction [*Id.*].

- ATF agents observed the described vehicle, driven by a woman, later identified as co-defendant Malori Houser, and a male passenger, later identified as co-defendant Gretavius Williams, arrive at the meeting place that afternoon. [*Id.* at 8-9, Page ID ## 125-26].

- ATF agents detained the occupants and read them their *Miranda* warnings "to which they stated they understood." [*Id.* at 9, Page ID # 126]. Agents recovered four ounces of methamphetamine from the sedan's center cupholder after Houser and Gretavius Williams admitted to the agents that four ounces of methamphetamine were located there. [*Id.*].

- Houser and Gretavius Williams told the agents that the methamphetamine had come from Room 245 of the "Red Roof motel" located near Cedar Bluff Road in Knoxville, Tennessee, that same day, and that they had observed additional, multiple ounces of methamphetamine in Room 245 packaged in the same manner as the four ounces of methamphetamine police found in the black sedan. [*Id.*]. They further stated this methamphetamine was stored in a jar. [*Id.*].

- Houser and Gretavius Williams also told agents that a person called "G" was in Room 245 when they left Room 245 earlier that day. [*Id.*]. "G" was later identified as co-defendant Grenardric Williams.

### III. Discussion

The Fourth Amendment provides "no warrant shall issue but upon probable cause, supported by oath or affirmation...." U.S. CONST. amend. IV. To establish probable cause to justify a search warrant, an affidavit must set forth facts which indicate "a fair probability exists that evidence of a crime will be located on the premises of the proposed search." *United States v.*

*Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (internal citations omitted); *see also United States v. Hines*, 885 F.3d 919, 923 (6th Cir. 2018); *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005). The Court must consider the totality of the circumstances as set out in the four corners of the affidavit. *Illinois v. Gates*, 462 U.S. 213, 230 (1983) (totality of the circumstances standard); *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 565 n. 8 (1971) (Court limited to review of affidavit itself); *Hines*, 885 F.3d at 923 (in considering the totality of the circumstances, "the court is limited to examining the information contained within the four corners of the affidavit") (citation omitted).

A warrant must be upheld "so long as the magistrate had a substantial basis for . . . conclud[ing] that a search would uncover evidence of wrongdoing . . ." *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). A magistrate's probable cause determination should be made in realistic and common sense fashion and reviewed in the same manner. *United States v. Finch*, 998 F.2d 349 351 (6th Cir. 1993) (citation omitted). A magistrate's determination of probable cause is due great deference and may be overturned only if the magistrate arbitrarily exercised his authority. *United States v. Christian*, 925 F.3d 305, 311 (6th 2019) (*en banc*).

The Sixth Circuit in *United States v. Shamaeizadeh*, 80 F.3d 1131, 1136 (6th Cir. 1996) described the application of the *Gates* test:

> In applying its "totality of the circumstances" test, the *Gates* court identified three factors in determining whether probable cause existed: 1) the basis of the informant's knowledge; 2) the reliability of the informant; and 3) the corroborative evidence presented by the government. *Gates*, 462 U.S. at 230-32, 245, 103 S.Ct. at 2328-29, 2335-36; *Leake*, 998 F.2d at 1363. The *Gates* court noted that these factors are not to be analyzed as "separate and independent requirements to be rigidly exacted in every case." *Gates*, 462 U.S. at 230, 103 S.Ct. at 2328. Rather, the reviewing court is to weigh them together in determining whether they form a substantial basis for finding probable cause. *Id.* The strength of one or more of

these factors may compensate for the deficiencies of another factor. *Gates*, 462 U.S. at 233-34, 103 S.Ct. at 2329-30.

(Internal footnote omitted); *see also United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999). "Our duty as a reviewing court is to ensure that the judge had a '"substantial basis for concluding that probable cause existed."' *United States v. Brown*, 828 F.3d 375, 381 (6th Cir. 2016) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (*en banc*)).

Defendant contends the affidavit used to secure the search warrant for Room 245 was deficient and fails to support probable cause for three reasons:

- The affidavit failed to provide any information regarding the credibility of the CS, as well as the informants Malori Houser, and Gretavius Williams.

- The affidavit fails to provide corroboration of the information provided by the informants.

- The affidavit fails to set forth facts to establish that methamphetamine would still be in Room 245 later in the day on February 13, 2019.

One common indicia of an informant's credibility is an affiant's long standing relationship with the informant during which the informant has provided information which has led to the arrest or conviction of defendants for drug crimes. This affidavit provides no such information. But there are other ways to demonstrate the credibility of an informant, and this affidavit does so. The police did corroborate the CS's information. The CS told the agents that a specific type of vehicle with a distinguishing feature, front end damage, carrying a man and woman would arrive at a predetermined place that afternoon to complete a drug deal for approximately 4 ounces of methamphetamine. Events unfolded exactly as the CS predicted. Agents fully verified the CS's information. Because of this complete corroboration of the CS's information, no other indicia of credibility is necessary.

Houser's and Gretavius Williams' credibility is essential to the validity of the search warrant because their statements led the agents to Room 245 of the motel. Their credibility is established in two ways. First, there was corroboration of their credibility: Houser and Gretavius Williams told the agents there would be methamphetamine in the center cupholder—and this proved to be true. Second, Houser and Gretavius Williams gave the agents self-incriminating information, *to wit*, they admitted that the methamphetamine in the center cupholder belonged to them by admitting they had bought the methamphetamine that very afternoon from someone in Room 245 at the Red Roof Inn in Knoxville. A declaration against penal interests is also a reason to accept as truthful an informant's statement. *United States v. Harris*, 403 U.S. 573, 583 (1971). In *Harris*, the Supreme Court explained,

> People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, *carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search.*

*Id.* at 583 (plurality opinion) (emphasis added). [1]

Defendant raises another issue related to Houser's and Gretavius Williams' credibility. In his Motion to Suppress, both Defendant and the Government attempt to bring matters outside the affidavit into the probable cause analysis. According to Defendant, after Houser and Gretavius Williams made initial statements to the agents at the time of their arrest, they were later questioned in separate, recorded interviews at the police station. Defendant alleges that some of these later statements contradicted some of the statements that Agent Baldwin attributed in his affidavit to Houser and Williams at the scene of their arrest. [Doc. 45, Pl.'s br. at 3-4]. Defendant further states

---

[1] *See also United States v. Chafin*, 622 F.2d, 929 (6th Cir. 1980); *United States v. Dickens*, 748 F. App'x 31, 38 (6th Cir. 2018) ("Grubbs was credible because officers knew her identity and because she had made statements against her own penal interests by admitting that there was a bank fraud scheme that extended beyond the one incident for which she had been arrested.")

that "[u]pon information and belief," these second statements were made before the execution of the search warrant at issue. [*Id.* at 4]. Defendant has provided no evidence of these statements or their timing to the Court. Further, in his reply brief, Defendant states, "it is not presently believed that [Agent Baldwin's] affidavit contained a false statement." [Doc. 52, Def.'s reply at 5, n. 3]. Nevertheless, Defendant relies on *United States v. Redmond*, 475 F. App'x 603 (6th Cir. 2012) to argue that conflicting statements by an informant damage that informant's credibility and must be considered in the probable cause analysis. The *Redmond* court was considering whether probable cause existed to search a vehicle under the automobile exception to the Fourth Amendment's search warrant requirement. *Id.* at 607-10. As previously stated, in reviewing whether an affidavit supports probable cause, the Court is limited to the four corners of the affidavit. An exception to this limitation arises under *Franks v. Delaware*, 438 U.S. 154 (1978). Defendant has not moved for—nor has he met the requirements for—a hearing pursuant to *Franks v. Delaware*. Accordingly, the Court must limit its probable cause analysis to the four corners of the affidavit. Further, for the same reason, the Court has also not considered in the probable cause analysis any of the information outside the affidavit that the Government says agents had at the time the search warrant was issued.

For the reasons set forth above, the Court finds that Houser and Gretavius Williams were credible informants upon whose statements agents could rely in determining that drug trafficking was taking place in Room 245 of the Red Roof Inn. No police corroboration beyond what the agents already possessed was necessary to find Houser's and Gretavius Williams' statements credible.

Defendant's last argument is, essentially, a staleness argument. Defendant asserts that Houser's and Williams' information could not support probable cause to believe agents would find

methamphetamine in Room 245 because, when the affidavit was obtained, it was late in the day and the person occupying Room 245 might have already checked out of the room. Defendant correctly argues that occupancy at a motel is generally temporary, and the affidavit contains no information as to whether the room would still be occupied later in the day by the person who sold the methamphetamine to Houser and Gretavius Williams. According to Defendant, "customary check out time for motel rooms is prior to noon." [Doc. 45, Def.'s br. at 7]. In other words, Defendant argues that, under the facts of this particular case, the information from Houser and Gretavius Williams that Room 245 was being used to sell methamphetamine was stale and could not support probable cause to believe evidence of a crime would be found in Room 245 on the late afternoon on February 13, 2019.

"[P]robable cause to search is concerned with facts relating to a presently existing condition . . . ." *United States v. Spike*, 158 F.3d 913, 923 (6th Cir. 1998) (citation omitted). Whether information in a search warrant affidavit has grown stale must be considered according to the circumstances of each case. *Id*. Various factors are considered:

> [T]he question of staleness depends on the "inherent nature of the crime." Instead of measuring staleness solely by counting the days on a calendar, courts must also concern themselves with the following variables: "the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?), etc." As these variables demonstrate, even if a significant period has elapsed since a defendant's last reported criminal activity, it is still possible that, depending upon the nature of the crime, a magistrate may properly infer that evidence of wrongdoing is still to be found on the premises.

*Id*. (internal citation omitted); *see also United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006) ("The expiration of probable cause is determined by the circumstances of each case, and depends on the inherent nature of the crime.") (internal citation omitted).

Defendant in this case is correct that the affidavit provides no information that Room 245 was booked for the night of February 13, 2019, by the person who occupied that room earlier in the day when Houser and Gretavius Williams bought the methamphetamine. Absent such information, one can infer that the motel room is a criminal forum of convenience. Further, drugs are easily transferable. These facts lean in Defendant's favor concerning the staleness argument.

On the other hand, only a few hours—a very short period of time—had elapsed from the time Houser and Gretavius Williams bought methamphetamine in Room 245 until the search warrant for Room 245 was signed and executed. Further, the affidavit provides that Houser and Gretavius Williams saw multiple amounts of methamphetamine in Room 245—packaged like their methamphetamine was packaged and stored in a glass jar. The reasonable inference arising from this information is that drug sales were ongoing in Room 245. To establish probable cause, police are not required to show with absolute certainty that Room 245 would still be occupied by the person who sold Houser and Gretavius Williams methamphetamine—"[p]robable cause 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Christian*, 925 F.3d at 311 (quoting *United States v. Tagg*, 886 F.3d 579, 585 (6th Cir. 2018)).

*United States v. Murphy*, 241 F.3d 447 (6th Cir. 2001) is factually similar to this case. In *Murphy*, police obtained a search warrant for a motel room. The affidavit used to obtain the search warrant provided that a reliable, confidential informant had bought crack cocaine from the defendant within the past five days. Prior to the drug transaction, police observed the defendant leave the motel after speaking with the informant on the phone, walk to his vehicle and meet the informant, and then sell the informant the crack cocaine. After the sale, police observed the defendant entering the motel. *Id*. at 457. Like the affidavit in this case, the affidavit in *Murphy*

provided no information that the defendant was continuing to occupy the motel room. The *Murphy* defendant argued that the information in the affidavit was stale and insufficient to support probable cause because the affidavit provided the sale had occurred within the last five days. The *Murphy* Court rejected this argument stating,

> although the affidavit provided for a five-day time period, both the information provided by the task force agent and the execution of the search occurred on the same day. Thus, contrary to Defendant's attempt to argue that the information was stale, the circumstances of this case indicate that it was not.

*Id*. at 458. Similarly, in the instant case, the information provided by Agent Baldwin and the execution of the search warrant occurred on the same day. In fact, the affidavit indicates only hours passed from the time Houser and Gretavius Williams bought methamphetamine in Room 245 until Agent Baldwin prepared the affidavit and sought the search warrant. The Court concludes that the information presented in the affidavit to the issuing judge was not stale.

### IV. Conclusion

Agent Baldwin's affidavit presented credible information that Malori Houser and Gretavius Williams had, that very afternoon, purchased approximately four ounces of methamphetamine from a person in Room 245 of the Red Roof Inn in Knoxville, Tennessee, and that drug sales in Room 245 were ongoing. Under the totality of the circumstances, as they were presented by Agent Baldwin in his affidavit, the Court concludes that the search warrant issued for Room 245 was supported by probable case. Accordingly, it is **RECOMMENDED** that Defendant Eugene Bennerson's motion to suppress evidence [Doc. 44] be **DENIED**.

ENTER.

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE