UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| *Plaintiff,* | ) | |
| | ) | Case No. 1:19-cr-76 |
| v. | ) | |
| | ) | Judge Mattice |
| EUGENE BENNERSON, | ) | Magistrate Judge Steger |
| | ) | |
| *Defendant.* | ) | |

## **ORDER**

On August 26, 2019, United States Magistrate Judge Christopher Steger filed his Report and Recommendation (Doc. 64) pursuant 28 U.S.C. § 636(b)(1), in which he recommends the Motion to Suppress (Doc. 44) filed by Defendant Eugene Bennerson be denied. Defendant timely objected to the Report and Recommendation and the Government responded. The Court has reviewed the record and submissions of the parties and accepts and adopts the findings of fact and conclusions of law set forth in the Report and Recommendation, with one exception. The Court does not agree that the record establishes how much time elapsed between when the informants observed evidence of drug trafficking and when the search warrant was issued. However, based on the surrounding circumstances, the Court finds probable cause for the search existed even without this finding, as the relevant time period was less than 24 hours. Accordingly, the Court will accept and adopt in part the Report and Recommendation (Doc. 64) and deny Defendant's Motion to Suppress (Doc. 44).

### **I.      STANDARD OF REVIEW**

The Court reviews *de novo* those portions of the Report and Recommendation to which an objection is made and may accept, reject, or modify, in whole or in part, the

Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1).

## II. FACTS

The facts set forth in the Report and Recommendation are not in dispute.[1] On February 13, 2019, special agents with the Tennessee Bureau of Investigation executed a search warrant at Room 245 at the Red Roof Inn Plus+ and Suites, located at 208 Market Place Blvd., Knoxville, Tennessee (the "Red Roof Inn"). (Doc. 64 at 1). Officers discovered, *inter alia*, digital scales, approximately 9 ¼ ounces of methamphetamine, and a Red Roof Inn receipt in the name of Eugene Bennerson. (*Id.*). On April 23, 2019, Defendant was indicted for several federal drug and firearm crimes, including conspiracy to distribute methamphetamine, distribution of methamphetamine, and possession of a firearm in furtherance of a drug trafficking crime. (Doc. 1).

On July 2, 2019, Defendant moved to suppress all evidence seized as a result of the search of Room 245. (Doc. 44). Defendant argues the affidavit in support of the warrant did not provide probable cause for the search because it relies on hearsay information without either establishing the reliability of the informants or corroborating their information. (*Id.* at 7-10). Defendant also argues the affidavit fails to establish his continued occupancy of the motel room and consequently the information in the affidavit was stale. (*Id.* at 6-7). The motion was referred to Magistrate Judge Steger, see Doc. 46, who recommends it be denied. (Doc. 64). On September 3, 2019, Defendant filed timely objections to the Report and Recommendation. (Doc. 67). The United States responded on September 9, 2019. (Doc. 68).

---

[1] Defendant objects to the Magistrate Judge's findings regarding the timing of events, see Doc. 67 at 6 n.2, which objections are discussed in section III.B, below.

## III. ANALYSIS

The Fourth Amendment provides no warrant shall issue but upon probable cause, supported by oath or affirmation ...." U.S. Const. amend IV. "The test for probable cause is simply whether there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Murphy*, 241 F.3d 447, 457 (6th Cir. 2001) (internal citation omitted). The issuing magistrate is tasked with making a "practical, common-sense decision," based on the affidavit, including the veracity, reliability, and basis of the knowledge of any persons supplying hearsay information. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). On review, the Court affords great deference to the magistrate's determination of probable cause. *United States v. Allen*, 211 F.3d 970 (6th Cir. 2000).

Here, the affidavit reflects that special agents with the Federal Bureau of Alcohol, Tobacco, and Firearms (ATF) were investigating a drug trafficking organization in the Knoxville, Tennessee area. (Doc. 45-3 at 3). The ATF had developed information that Grenardic Williams distributed methamphetamine in Knoxville, specifically near Cedar Bluff Road. (*Id.*). According to the affidavit, ATF agents had used a Confidential Source (CS) to purchase methamphetamine from members of the organization. (*Id.*).

On February 13, 2019, the ATF used a CS to arrange a controlled buy of 4 ounces of methamphetamine. (*Id.*). According to the CS, Grenardic Williams told the CS that his brother and a woman would arrive in Athens, Tennessee "later in the afternoon on February 13, 2019, to complete the transaction" and that they would be in a black two-door sedan with front-end damage. (*Id.*). The described vehicle arrived at the expected location, with a white female driver and a black male passenger. (*Id.*). Agents detained the occupants of the vehicle, identified as Malorie Houser and Gretavius Williams. (*Id.*).

3

The affidavit continues:

> After the Miranda Rights had been read, HOUSER and GRETAVIUS WILLIAMS admitted that approximately four (4) ounces of Methamphetamine was located in their vehicle in the center cupholder…. HOUSER and GRETAVIUS WILLIAMS added that they brought the Methamphetamine from Room #245 of the Red Roof motel located near Cedar Bluff Road in Knoxville, Tennessee. Houser and GRETAVIUS WILLIAMS also stated that they had observed multiple ounces more of Methamphetamine located in Room #245. HOUSER and GRETAVIUS WILLIAMS described the multiple ounces of Methamphetamine to be inside a jar in Room #245. HOUSER and GRETAVIOUS WILLIAMS also stated that the way the multiple ounces of Methamphetamine was packaged in Room #245 was the same way the four (4) ounces of Methamphetamine was packaged that was found in their vehicle. Lastly, HOUSER and GRETAVIOUS WILLIAMS stated that a black male nicknamed "G" was in Room #245 when HOUSER and GRETAVIOUS WILLIAMS left Room #245 earlier on February 13, 2019.
>
> HOUSER and GRETAVIOUS WILLIAMS also advised ATF Special Agents that "G" was present in the room when HOUSER and GRETAVIOUS WILLIAMS obtained the four (4) ounces of Methamphetamine earlier on February 13, 2019. Based upon your affiant's knowledge of this investigation, I believe "G" arrived in an unknown vehicle at the indicated motel and the vehicle is believed to be still located on the premises.

(*Id.* at 4). The search warrant was issued at approximately 5:40 p.m. on February 13, 2019. (Doc. 45-1 at 3).

### A.     Reliability of Informants Houser and Williams

Defendant contends the affidavit is insufficient to support probable cause because it relies on hearsay information without providing any indication of the reliability of the informants or any evidence to corroborate the information they provided. (Doc. 67 at 7-10). In determining whether probable cause exists for the issuance of a warrant, a magistrate must review the totality of the circumstances, including the veracity and basis of knowledge of persons supplying hearsay information. *United States v. Williams,* 224 F.3d 530, 532 (6th Cir. 2000); *Illinois v. Gates,* 462 U.S. 213, 238 (1983). After being detained by law enforcement, Houser and Williams admitted there was

4

methamphetamine in the vehicle they occupied. (Doc. 45-3 at 4). They further admitted they had brought[2] the methamphetamine from Room 245 of the Red Roof Inn. (*Id.*). The Magistrate Judge found their statements constituted admissions against penal interest, which have intrinsic credibility. (Doc. 64 at 5). He further found the existence of methamphetamine in the vehicle corroborated the information they provided about methamphetamine in Room 245. (*Id.*).

With the exception of one footnote, Defendant's objection to this finding appears to be a word for word reiteration of the corresponding section of his memorandum in support of the motion to suppress. It is well-established that "[a] general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge." *VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004). In the absence of objection, the district court is not obligated to conduct a *de novo* review of a report and recommendation. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.").

The Court has nonetheless fully reviewed Defendant's arguments in this regard and agrees with Magistrate Judge Steger's conclusions. An informant's hearsay can be the basis of evidence presented in support of an application for a warrant, "so long as the issuing judicial officer is reasonably assured that the informant was credible and the information reliable." *United States v. Williams*, 224 F.3d 530, 531 (6th Cir. 2000).

---

[2] The Report and Recommendation states they admitted "they had bought the methamphetamine that very afternoon." (Doc. 64 at 5). To be precise, the affidavit says they admitted they "brought" the methamphetamine from Room 245. (Doc. 45-3 at 4). The distinction is immaterial here as both are statements against penal interest.

5

Independent corroboration of an informant's information is not always required where other indicia of credibility exist. *See United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000). As Defendant argues, the affidavit provides no information about Houser and Gretavius Williams, who, based on the affidavit, appear to have been unknown to law enforcement. Their reliability may be further discounted by the involuntary circumstances surrounding their admissions. They did not come to the police with a tip, but rather were detained by law enforcement with a large amount of methamphetamine in their vehicle in an intercepted drug sale.

Nonetheless, it is well-settled that "[a]dmissions of crime, like admissions against proprietary interests, carry their own indicia of credibility – sufficient at least to support a finding of probable cause to search." *United States v. Harris*, 403 U.S. 573, 583 (1971); *United States v. Riddick*, 134 F. App'x 813, 821-22 (6th Cir. 2005) (collecting cases). In addition to their statements, Houser and Williams provided fairly specific details about the hotel room, the location and packaging of the methamphetamine they had seen in the room, and the individuals who were present when they left. In conjunction with these circumstances, Houser and Williams' statements against their penal interest were sufficient to reasonably assure the magistrate that the information they provided was reliable.

### B.     Whether the Information Provided Was Stale

Next, Defendant argues that by failing to establish continued occupancy of the motel room, the affidavit fails to provide probable cause that evidence of drug trafficking would still be present by the evening of February 13, 2019. "The probable cause inquiry gauges the likelihood that evidence of a crime may <u>presently</u> be found at a certain location." *United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006) (emphasis added).

Thus, a search warrant "must be supported by 'facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause *at that time*.'" *Id.* (*quoting Sgro v. United States*, 187 U.S. 206, 210-11 (1932)).

Here, the affidavit indicates the CS arranged with Grenardric Williams to meet his brother and a woman in Athens, Tennessee, "later in the afternoon on February 13, 2019." (Doc. 45-3). "Later that afternoon," agents observed the vehicle described in the call arriving at the location. (*Id.*). Houser and Williams said they had observed multiple ounces of methamphetamine in Room 245, but the affidavit does not indicate when they saw it. (*Id.* at 4). The present-tense phrasing strongly implies it was there when they left. (*Id.* ("Houser and Gretavius Williams described the multiple ounces of Methamphetamine to be inside a jar in Room #245.")). The affidavit states a man named "G," now known to be Bennerson, was in the room when they obtained the methamphetamine "earlier on February 13, 2019" and also when they left the room "earlier on February 13, 2019." (*Id.*).

The Report found the temporary nature of motel lodgings and the fact that drugs are easily transferable weighed towards a finding that the information was stale. (Doc. 64 at 8). On the other hand, the existence of "multiple ounces" of methamphetamine packaged similarly to the four ounces found in the vehicle created an inference that drug sales in Room 245 were ongoing. (*Id.* at 9). Moreover, the Report and Recommendation found that "only a few hours—a very short period of time—had elapsed from the time Houser and Gretavius Williams bought methamphetamine in Room 245 until the search warrant for Room 245 was signed and executed." (*Id.* at 8). Elsewhere, the Report indicates Houser and Williams admitted to purchasing methamphetamine "that very afternoon" from someone in Room 245. (*Id.* at 5). Coupled with the inference that drug

7

sales were ongoing, the short period of time between when the informants left the motel with methamphetamine and the issuance of the warrant outweighed other considerations. (*Id.* at 8). Relying in part on *United States v. Murphy*, 241 F.3d 447 (6th Cir. 2001), the Magistrate Judge determined the information in the affidavit was not stale and was thus sufficient to provide probable cause for the search.

Defendant challenges several of the Magistrate Judge's findings. He contends there is nothing in the affidavit to support the conclusion that "only a few hours" elapsed between the informants' departure from the hotel room and the issuance of the search warrant. (Doc. 67 at 6 n.2). Similarly, he objects to the finding that the informants admitted to purchasing methamphetamine "that very afternoon." (*Id.*). Finally, he challenges the Magistrate Judge's reading of *Murphy*. (*Id.* at 6-7).

The Court agrees that the record does not support the determination that "only a few hours" elapsed or that the drugs were purchased "that very afternoon," because the affidavit does not establish when Houser and Gretavius Williams left Room 245. It indicates the CS arranged to meet Houser and Williams "later in the afternoon on February 13, 2019." This loosely suggests it was already afternoon when arrangements were made, but that is not the only or even most natural interpretation of the phrase in informal conversation. Even if Grenardric Williams and the CS arranged the transaction in the afternoon, that does not mean Houser and Gretavius Williams left Room 245 in the afternoon. They might have anticipated a sale and obtained the methamphetamine earlier in the day. Because the affidavit does not establish when the informants obtained the methamphetamine and left the motel, it does not establish that only a few hours passed between that time and the issuance and execution of the warrant on the evening of February 13, 2019.

The Court nonetheless finds the information provided by the informants was not stale because the evidence was observed and conveyed, the affidavit executed, and the search warrant issued and executed all in the same day. The affidavit therefore establishes a fair probability that evidence of a crime would be discovered in Room 245 on the evening of February 13, 2019. In determining whether information has become stale and probable cause expired, courts do not look solely to the passage of time, but to the surrounding circumstances, including: "the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?) the place to be searched (mere criminal forum of convenience or secure operational base?)." *United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006) (*quoting United States v. Spikes*, 158 F3d 913, 923 (6th Cir. 1998)) (internal citation omitted).

In *Hython*, the United States Court of Appeals for the Sixth Circuit observed that the sale of drugs from a residence was not inherently ongoing. *Id.* at 485. "Rather, it exists upon a continuum ranging from an individual who effectuates the occasional sale from his or her personal holdings of drugs to known acquaintances, to an organized group operating an established and notorious drug den." *Id.* Thus, the Sixth Circuit has found sufficient an affidavit stating that an informant purchased crack cocaine from the subject within the last five days, *United States v. Murphy*, 241 F.3d 447 (6th Cir. 2001), but rejected an affidavit that described a completely undated controlled buy, *Hython*, 443 F.3d at 486.

The character of the criminal activity reported by Houser and Williams suggests less enduring criminal activity, as drugs are usually dissipated quickly through sale or consumption. Yet the quantity of drugs and their packaging makes clear they were not

solely for personal use or for "the occasional sale from... personal holdings of drugs." *Id.*; *see also U.S. v. Leaster*, 35 F. App'x 402, 409 (6th Cir. 2002) ("Information related to drug trafficking does not grow stale as quickly as information regarding mere possession."). The thing to be seized – multiple ounces of methamphetamine – was easily transferable, as evidenced by the multiple ounces already possessed by Houser and Williams. Finally, the hotel room to be searched was a more temporary accommodation than a residence, but certainly not a momentary or passing location.

Though an intervening checkout time might somewhat lessen the probability that drugs would be found in the hotel room, it does not reduce it below a fair probability. Even if evidence of drug trafficking had last been observed the morning of February 13, 2019, the totality of the circumstances suggests a fair probability that this activity would be ongoing that evening. Moreover, the affidavit recites that "[b]ased upon your affiant's knowledge of this investigation," Defendant Bennerson ("G") was believed to have "arrived in an unknown vehicle at the indicated motel and the vehicle is believed to still be located on the premises." (Doc. 45-3 at 4). Even if the information regarding the existence, quantity, and packaging of methamphetamine in Room 245 had grown stale by the evening of February 13, 2019, the continued presence of the Defendant at the motel refreshed that information, establishing a fair probability that evidence of criminal activity would still be found upon search.

Finally, Defendant takes issue with the Magistrate Judge's reading of *Murphy*, arguing the case is distinguishable because there was continuing surveillance in *Murphy* in the less than three hours between the controlled buy and the execution of the affidavit. (Doc. 67 at 7). These facts were not contained in the affidavit in *Murphy* and do not appear to have been considered by the court in its very brief discussion of whether a controlled

buy "within the last five days" was sufficient to support probable cause. *Murphy*, 241 F.3d at 458. The *Murphy* court provided almost no analysis of its staleness determination, noting only that "both the information provided by the task force agent and the execution of the search occurred on the same day." *Id.* To the extent *Murphy* is instructive, it supports the denial of the motion to suppress.

## IV.    CONCLUSION

For the reason stated herein, Defendant's Objections are **OVERRRULED**. The Court **ACCEPTS** and **ADOPTS IN PART** Magistrate Judge Steger's Report and Recommendation (Doc. 64) pursuant to 28 U.S.C. § 636(b)(1), and Defendant's Motion to Suppress (Doc. 44) is **DENIED**.

**SO ORDERED** this 4th day of October, 2019.

        */s/ Harry S. Mattice, Jr.*
        HARRY S. MATTICE, JR.
        UNITED STATES DISTRICT JUDGE